# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS D. CROCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:09-426 |
| | ) | |
| CITY/TOWN OR BORO OF MT. | ) | Chief Judge Gary L. Lancaster |
| LEBANON, PENNA., MT. LEBANON | ) | Magistrate Judge Cathy Bissoon |
| POLICE DEPT., OFFICER B. HENLEY, | ) | |
| OFFICER T. RUTOWSKI, OFFICER K. | ) | |
| SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 45) be denied, as discussed below.

### II. REPORT

**BACKGROUND**

Plaintiff Thomas D. Crock brought this action asserting various claims related to alleged unlawful conduct arising out of a traffic stop for failure to yield to a pedestrian. Following an order (Doc. 28) on a motion to dismiss, the only remaining claims are Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Officer Brian Henley, Officer Tom Rutowski, and Officer Kevin Smith for alleged violation of the Fourth Amendment's prohibition of unreasonable searches and seizures.

Specifically, Plaintiff alleges three purportedly unlawful searches or seizures: (1) that Defendant Henley conducted an unlawful traffic stop "lacking probable cause, or reasonable

articulable basis"; (2) that Defendant Smith, at the instruction of Defendant Rutowski, conducted an illegal search of the glove compartment of Plaintiff's automobile; and (3) that Defendant Smith, at the instruction of Defendant Rutowski, conducted an illegal seizure of Plaintiff's Ohio and Virginia driver's licenses and "some other personal items." Amended Compl. ¶¶ 6-7 (Doc. 15).

Defendants contend that the initial traffic stop was legal because Officer Henley had a reasonable basis to believe Plaintiff violated a traffic law. See Defs.' Motion ¶ 7. Defendants contend that the search of the glove compartment of Plaintiff's automobile was justified by a reasonable belief that Defendants were confronted with a potentially dangerous traffic stop. Id. at ¶ 8. Defendants further contend that the search was justified as a reasonable search to verify ownership. Id. at ¶ 9. Defendants do not address Plaintiff's contention that Defendants illegally "seized" Plaintiff's driver's licenses and other personal items.

Facts

On April 12, 2007, Plaintiff was driving in Mt. Lebanon, Pennsylvania when he was subjected to a traffic stop by Defendant Henley. Defs.' Concise Statement of Undisputed Material Facts ("Defs.' Facts") ¶ 1 (Doc. 46). Prior to being stopped by Defendant Henley, Plaintiff was stopped at a stoplight at an intersection, waiting to turn left onto Washington Road. See Defs.' Facts ¶ 4. To Plaintiff's left, there was a crosswalk and a pedestrian on the sidewalk. Id. at ¶¶ 5-6. The pedestrian appeared to be preparing to cross the street. Id. at ¶ 7.[1] Plaintiff slowed down to let the pedestrian cross the street. Id. at ¶ 6. The pedestrian did not cross the

---

[1] Defendants assert that "[t]he pedestrian was preparing to cross the street," Defs.' Facts ¶ 7, but this "fact" is unsubstantiated. Defendants cite to deposition testimony in which Mr. Crock explained that he suspected that the pedestrian was preparing to cross the street, but there is no evidence that the pedestrian was in fact preparing to cross the street. Defs.' Facts Exh. A at 25:16-20 (Doc. 46-1 at 3).

street.  Id.  Plaintiff then proceeded to turn left onto Washington Road.  Id.  Defendant Henley then pulled over Plaintiff and initiated a traffic stop for failure to yield to a pedestrian.  Id. at ¶¶ 1-3, 8.  Plaintiff expressed disagreement over the traffic stop.  Id. at ¶ 23.

At some point during the traffic stop, Defendants Smith and Rutowski arrived on the scene.  Answer at ¶ 5.  Plaintiff was unable to provide a valid driver's license to Defendants.  See Defs.' Facts at ¶ 9.  Plaintiff provided Defendants with a Pennsylvania form DL-640, which was a receipt for Plaintiff's Virginia driver's license.  See id. at ¶ 11.  Plaintiff's Virginia driver's license had been confiscated by the Pennsylvania State Police due to a prior suspension or revocation.  See id. at ¶¶ 11-14.  At the time of the traffic stop, Plaintiff had a valid Virginia driver's license, but did not physically have the license in his possession.  Id. at ¶ 10.  Plaintiff also provided Defendants with expired Ohio and Pennsylvania driver's licenses.  Id. at ¶ 15-16.

In order to find his identification, Plaintiff searched through his glove compartment and the front of his car.  Id. at ¶¶ 17-18, 34, 37-38.  At one point, Plaintiff got out of the car to look for something in the trunk.  Id. at ¶ 24.  At some point while Plaintiff was outside of his vehicle, Defendant Smith searched the glove compartment of Plaintiff's vehicle.  Id. at ¶ 39.  Defendants concede for purposes of summary judgment only that Plaintiff did not consent to Defendant Smith's search of the glove compartment.  Defs.' Br. at 4 n.2 (Doc. 47).

Defendant Henley ultimately issued Plaintiff a citation for failure to yield to a pedestrian under 75 Pa.C.S. § 3542.  See id. at ¶ 3.  Plaintiff was found guilty on the charge at a magistrate hearing.  Id. at ¶ 41.  Plaintiff subsequently was found "Not Guilty" at a summary appeal hearing.  Answer at ¶ 7 (Doc. 29).

## ANALYSIS

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Renchenski v. Williams, 622 F.3d 315, 324 (3d Cir. 2010); see also Fed. R. Civ. P. 56(c).

### A. Initial Traffic Stop

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" for purposes of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 653 (1979); United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006). A routine traffic stop is justified by "reasonable suspicion" that an individual has violated a traffic law. Delfin-Colina, 464 F.3d at 397-98. Reasonable suspicion "is a generally undemanding standard" for which a police officer bears the initial burden of production. Id. at 397. "[A]n officer's Fourth Amendment burden of production is to (1) identify the ordinance or statute that he believed had been violated, and (2) provide specific, articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction." Id. at 399. An officer's subjective understanding of the law is irrelevant. Id.

Defendants assert that Defendant Henley had a reasonable basis to believe Plaintiff violated 75 Pa.C.S.A. § 3542 by failing to yield to a pedestrian. The statute provides: "When traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection." 75 Pa.C.S.A. § 3542(a).

Defendants' argument fails for at least three reasons. First, Defendants admit that Plaintiff turned left at an intersection with a "stoplight." Defs.' Facts ¶ 4. No reasonable officer could have possessed reasonable suspicion that Plaintiff violated a statute that applies only

"[w]hen traffic-control signals are not in place or not in operation." 75 Pa.C.S.A. § 3542(a).[2] Second, Defendants admit that the pedestrian was "on the curb," not in the crosswalk. Id. at ¶ 6. No reasonable officer could have possessed reasonable suspicion that Plaintiff violated a statute that applies when a pedestrian is "within any marked crosswalk or within any unmarked crosswalk." 75 Pa.C.S.A. § 3542(a); see also Commonwealth v. Perry, 2009 PA Super 196, ¶ 5, 982 A.2d 1009, 1012 (Pa. Super. 2009) (interpreting 75 Pa.C.S.A. § 3542(a) and explaining, "[a] driver has no duty to yield to a pedestrian on the sidewalk under Pennsylvania law."). Third, Defendants admit that Plaintiff slowed down to allow the pedestrian to cross, and turned left only after the pedestrian did not cross the street. Even if 75 Pa.C.S.A. § 3542(a) could be interpreted to apply to a pedestrian standing on a sidewalk waiting to cross the street, no reasonable officer could believe that a driver is prohibited from turning in front of a pedestrian standing on a sidewalk when the pedestrian does not cross the street.

Under the facts as presented for purposes of summary judgment, Defendants have failed to "provide specific, articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion" that Plaintiff violated 75 Pa.C.S.A. § 3542. Delfin-Colina, 464 F.3d at 399. Defendants' summary judgment motion should therefore be denied with respect to the alleged illegal traffic stop.

**B.      Search of Plaintiff's Automobile**

   1.      Protective Search for Weapons

Defendants assert that their search of Plaintiff's vehicle was justified because they "had reasonable suspicion to believe that they were confronted with a potentially dangerous traffic stop." Defs.' Br. at 4. Police may search the passenger compartment of an automobile for

---

[2] Other statutes apparently address pedestrian right-of-way when traffic-control or pedestrian-control signals are in place, see 75 Pa.C.S.A. §§ 3112-3113, but Defendants do not address those statutes in their Motion for Summary Judgment.

weapons "if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049 (1983) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).

Defendants set forth various facts in support of their assertion of reasonable suspicion that Plaintiff was dangerous. First, Plaintiff was unable to provide a valid, current driver's license. Plaintiff instead provided a form indicating his driver's license had been suspended or revoked, and two expired driver's licenses. Second, it took Plaintiff "twice as long as normal" to find those forms of identification, and he became frustrated. Third, Plaintiff disputed the reason for the traffic stop with Officer Henley. Fourth, Plaintiff searched through his glove compartment several times, searched the passenger compartment of his vehicle, and searched his trunk. For at least part of the time that Plaintiff was searching through his glove compartment and the passenger compartment of his vehicle, Defendants were not present at his vehicle and were to the rear of his vehicle where they could observe this behavior. According to Defendants, these facts created a reasonable suspicion that Plaintiff was dangerous.

It remains unclear how certain of the "facts" identified by Defendants would contribute to a reasonable suspicion of danger. The fact that Plaintiff took "twice as long as normal" to find his identification is based on Plaintiff's own impressions, not based on Defendants' experience with traffic stops as police officers. See Defs.' Facts ¶ 22 (citing Pl.'s Dep. Tr.). When asked "How much time do you think you had spent looking for identification," Plaintiff testified: "At least as twice as long as it normally should take to find ID. How long that was, I have no idea. I don't know." Doc. 46-1 at 23. The meaning of "twice as long as normal" therefore is unclear.

Even if "twice as long as normal" had a discernible meaning, Defendants have provided no evidence regarding how that would contribute to a reasonable suspicion of danger.

The fact that Plaintiff became frustrated similarly is based on Plaintiff's mental impression of the situation. See id. ¶ 20 (citing Pl.'s Dep. Tr.). Defendants have not presented any evidence regarding whether Plaintiff's frustration was manifested in an observable manner that would have led a police officer to have a reasonable suspicion of danger. The fact that Plaintiff felt frustrated, if not observable by Defendants, could not contribute to any suspicion that he was dangerous.

Similarly, the summary judgment record contains no evidence regarding the manner in which Plaintiff disputed the reason for the traffic stop and how that would contribute to a reasonable suspicion of danger. The only evidence in the summary judgment record regarding Plaintiff's disagreement with the reason for the traffic stop is Plaintiff's testimony that: "I don't know how I expressed it, but I am sure I expressed the fact that I disagreed with [Officer Henley]." Doc. 46-1 at 16. Defendants have presented no evidence at this stage that Plaintiff disagreed with Officer Henley in a manner that would contribute to a reasonable suspicion that Plaintiff was dangerous.

Also, genuine issues of material fact exist regarding the circumstances surrounding Plaintiff's search of his vehicle and whether those circumstances would give rise to a reasonable suspicion that Plaintiff was dangerous. Defendants emphasize the purported fact that Plaintiff searched through his glove compartment and the floor of his car while Defendants "were not present at his vehicle and were to the rear of his vehicle where they could observe this behavior." Defs.' Br. at 9. According to Defendants, Plaintiff's purported behavior supported a reasonable

suspicion that Plaintiff was searching for a weapon while Defendants were away from his vehicle. See id.

Nothing in the summary judgment record indicates that Plaintiff was searching through his car while Defendants were away from the car. Plaintiff's deposition testimony, the only evidence in the summary judgment record, indicates that Plaintiff searched through his car only after Defendant Henley approached Plaintiff's car, stood by the car, and watched Plaintiff. See Doc. 46-1 at 10-12. At some point, Plaintiff got out of his car with Defendants' permission and searched the trunk of his vehicle. Id. at 12-13. At some point, Plaintiff also searched around the floor in the front compartment of his vehicle. Id. at 13-14. Plaintiff could not remember if Officer Henley remained at Plaintiff's car while Plaintiff searched the floor of his car or if Officer Henley returned to his police cruiser during this time. Id. at 14.

After Defendants Smith and Rutowski arrived at the scene, Plaintiff may have searched the floor of his vehicle again, possibly at Defendant Smith's request. Id. at 27-28. Plaintiff contends that he may have continued searching the floor of his vehicle when Defendants "were talking by themselves" or "farting around outside." Id. at 27-28. Despite Defendants' assertion that they were to the rear of Plaintiff's car, Defs.' Br. at 9, nothing in the summary judgment record indicates where Defendants were standing. See Doc. 46-1 at 27-28. Similarly, nothing indicates that Plaintiff searched through his glove compartment while Defendants were away from his car.[3]

Drawing all reasonable inferences in Plaintiff's favor for purposes of summary judgment, Plaintiff searched his vehicle at Defendants' request in an attempt to locate identification.

---

[3] Defendants' alternative argument that their search of Plaintiff's glove compartment was justified because one of the Defendants saw what appeared to be additional identification in plain view inside Plaintiff's glove compartment undermines Defendants' assertion that Plaintiff searched through his glove compartment while Defendants were away from his car.

Plaintiff provided Defendants with two expired driver's licenses, but was unable to provide a current, valid driver's license. Defendants watched Plaintiff while he searched his car. At least some of this searching was conducted while at least one of Defendants stood by Plaintiff's car. Defendants allowed Plaintiff to search the trunk of his car. After all three Defendant police officers were present at the scene, Plaintiff may have continued searching the passenger compartment of his car while Defendants were away from his car.[4] Plaintiff expressed disagreement with the reason for the traffic stop, but nothing indicates that Plaintiff expressed his disagreement in a threatening or suspicious manner.

It is not apparent how these circumstances would create a reasonable suspicion that Plaintiff was potentially dangerous, and Defendants have not provided any evidence that, in their experience as police officers, such circumstances would create a reasonable suspicion that Plaintiff was potentially dangerous. See United States v. Arvizu, 534 U.S. 266, 273-74 (2002) (noting that reasonable suspicion determinations must be made based on "totality of the circumstances" and that officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" (quoting United States v. Cortez, 449 U.S. 411, 418 (1981))). Thus, a genuine issue of material fact exists as to whether Plaintiff's behavior during the traffic stop would create a reasonable suspicion that Plaintiff was dangerous.

Defendants cite several cases for the proposition that "furtive" behavior can support an officer's "reasonable suspicion." Defs.' Br. at 9. But none of the cases cited by Defendants involve a protective search of an automobile based on a reasonable suspicion that a suspect is

---

4   There is no evidence that Defendants took any steps to stop Plaintiff from continuing to search his car, suggesting that a reasonable officer (assuming Defendants were reasonable officers) would not have believed Plaintiff was searching for a weapon.

potentially dangerous. United States v. Lewis, Cr. No. 2008-21, 2008 WL 2625634, at *3 (D. Virgin Islands July 2, 2008) (finding reasonable suspicion of criminal activity justified further investigatory detention); United States v. Powell, 176 Fed. Appx. 267, 269 (3d Cir. 2006) (finding reasonable suspicion that cocaine was on premises justified parole officer's search of suspect's closet); United States v. Edmonds, 240 F.3d 55, 61 (D.C. Cir. 2001) (finding reasonable suspicion of criminal activity justified investigatory traffic stop); United States ex rel. Richardson v. Rundle, 461 F.2d 860, 864 (3d Cir. 1972) (finding reasonable suspicion of armed robbery justified stop and frisk of suspect).[5] Thus, none of the cases cited by Defendants are applicable to the present case.

Defendants primarily rely on Lewis. But even if Lewis were applicable, Lewis is readily distinguishable from the present case. In Lewis, police officers observed an ammunition magazine and butt of a firearm in plain view inside the suspects' car. Id. at *3. One suspect was observed "bending down in his seat" when the police officers stopped the car, which the police officers reasonably could have perceived as "furtive or evasive." Id. While the police officers were away from the car, the suspect exited the car and began to walk away as if he were fleeing. Id. These circumstances supported a reasonable suspicion that criminal activity was afoot,

---

[5] The court in Rundle found a protective frisk under Terry justified because of a reasonable suspicion that a fleeing suspect might be armed. Because the Terry reasonable suspicion standard that justifies a protective frisk is the same standard that justifies a protective search of an automobile, Long, 463 U.S. at 1051, Rundle arguably applies to the present case. Rundle, however, is readily distinguishable. In Rundle, police officers had a reasonable suspicion that a fleeing suspect had just committed an armed robbery. Thus, the police officers could reasonably infer the suspect was armed, justifying a protective frisk of the suspect. 461 F.2d at 863-64. In the present case, Defendants have presented no evidence indicating a reasonable suspicion that Plaintiff had just committed a crime involving weapons or that Plaintiff had a weapon.

justifying further investigatory detention of the defendants.[6] In the present case, Defendants did not observe any weapons in plain view. Plaintiff's allegedly "furtive" movements were made after Defendants stood by the car and watched Plaintiff search his car. Plaintiff did not attempt to flee. Lewis therefore is inapposite.

Because genuine issues of material fact exist as to whether Plaintiff's behavior created a reasonable suspicion that Plaintiff was dangerous, Defendants' motion for summary judgment on the basis of a justified protective search should be denied.

2. Search for Identification

Defendants' final contention is that the search of the glove compartment of Plaintiff's car was justified in an attempt to verify the car's ownership. Defendants assert that their search of Plaintiff's glove compartment was justified because Plaintiff was unable to provide a valid, current proof of identification, and because one of Defendants saw something that looked like additional identification in Plaintiff's glove compartment. Defs.' Br. at 11-12.

Defendants did not provide any evidence that one of them actually saw something that looked like additional identification. Defendants only provided Plaintiff's deposition testimony that during the traffic stop, one of Defendants either said or implied that he saw something that looked like additional identification in Plaintiff's glove compartment. See Defs.' Facts ¶ 33 (citing Plaintiff's deposition testimony).

---

[6] The court in Lewis did not address whether a reasonable suspicion of danger existed to justify a protective search of the car. The reasonable suspicion inquiry in Lewis was limited to whether a reasonable suspicion of criminal activity justified investigatory detention of the defendants. The police officers searched the defendants' car only after arresting the defendants, and the court found that search reasonable as a search incident to a lawful arrest. Since Defendants in the present case did not arrest Plaintiff, Defendants could not have searched Plaintiff's car incident to a lawful arrest.

Regardless of whether or not one of Defendants actually saw something that looked like additional identification in Plaintiff's glove compartment, Defendants have not identified any legal basis to justify the search of Plaintiff's glove compartment under these circumstances. Defendants rely on several cases regarding warrantless searches for a vehicle registration to verify vehicle ownership. See Defs.' Br. at 10-11. According to Defendants, those cases are applicable because "there is little value in a driver producing proof of registration, if he cannot produce a valid form of identification showing that he is the individual named in the registration." Id. at 11. But a person may drive a vehicle owned by someone else. Thus, Defendants cannot justify a search for identification based on a purported need to determine ownership.[7]

Further, the cases cited by Defendants are readily distinguishable from the present case. Defendants first cite two cases from the New Jersey Supreme Court. Id. at 10. In State v. Pena-Flores, 965 A.2d 114, 129 (N.J. 2009), the court analyzed the New Jersey Constitution and found that a police officer was entitled to search for evidence of vehicle ownership after the officer determined that the license plate and bill of sale did not correspond to the stopped vehicle. In the present case, Defendants have provided no evidence that the ownership of Plaintiff's vehicle was in dispute. In State v. Boykins, 232 A.2d 141, 143 (N.J. 1967), the court simply noted, in dicta, that "if the operator is unable to produce proof of registration, the officer may search the car for evidence of ownership." Thus, neither of the New Jersey cases cited by Defendants supports their argument.

---

[7] Additionally, the traffic stop resulted in a citation for failure to yield to a pedestrian and apparently ended without Plaintiff being arrested, suggesting that Defendants were satisfied that Plaintiff was who he claimed to be and that he had a valid driver's license, even though he did not have the license in his possession at the time.

- 12 -

Defendants also cite United States v. Kelly, 267 F. Supp. 2d 5, 14 (D.D.C. 2003). In Kelly, the court noted that a limited search of a vehicle to determine ownership is reasonable "in certain unusual circumstances." Kelly, 267 F. Supp. 2d at 13. In Kelly, a car was involved in an accident that rendered the driver incoherent. The driver was taken away from the accident scene in an ambulance. A police officer ran a check on the car's Vehicle Identification Number but was unable to ascertain the ownership information from the check. The police officer then searched the car's glove compartment, seeking the car's registration. Under those circumstances, "[w]ith the car still half positioned in the middle of the street, and with an accident report waiting to be filled out," the court found the search of the glove compartment reasonable. No such extenuating circumstances exist in the present case.

Defendants also cite United States v. Ferri, 357 F. Supp. 487, 490 (W.D. Wis. 1973). But Ferri actually undermines Defendants' argument. In Ferri, the police lawfully stopped a car with a reasonable belief that the car contained illegal drugs. The car was then seized under a federal statute authorizing seizure and forfeiture of vehicles used to transport narcotic drugs. The driver refused to give his name and refused to say who owned the car, but told the officer the car registration was in the glove compartment. The officer then searched the car's glove compartment to find the registration. The court noted that: "A failure on the part of the person in possession to prove ownership cannot justify a general search of the car or his person for evidence of ownership." Id. at 490. The court found the search reasonable only because the driver "indicate[d] the precise location of a document which proves ownership," which is exactly where the police officer searched. Id.

The narrow circumstances of Ferri are absent from the present case. Defendants did not seize Plaintiff's car and subject it to forfeiture. Plaintiff did not refuse to give his name or refuse

- 13 -

to say who owned the car he was driving. Plaintiff did not tell Defendants that the documents they were looking for were in the glove compartment. Even if Plaintiff failed to prove ownership or his identity, the Ferri court held that such circumstances "cannot justify a general search of the car or his person." Id.

Finally, controlling U.S. Supreme Court precedent not identified by Defendants appears to foreclose any justification of Defendants' search on the basis of Plaintiff's failure to provide an unexpired form of identification. In Knowles v. Iowa, 525 U.S. 113 (1998), the Court held that an automobile search incident to a speeding citation was unconstitutional. The Court noted that once the driver was stopped for speeding and issued a citation, "all the evidence necessary to prosecute that offence had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." Id. at 118. The Court rejected an argument that a search incident to citation is justified to find evidence of a suspect's identity:

> Iowa nevertheless argues that a 'search incident to citation' is justified because a suspect who is subject to a routine traffic stop may attempt to hide or destroy evidence related to his identity (*e.g.*, a driver's license or vehicle registration), or destroy evidence of another, as yet undetected crime. As for the destruction of evidence relating to identity, if a police officer is not satisfied with the identification furnished by the driver, this may be a basis for arresting him rather than merely issuing a citation.

Id.

More recently, the Court limited the permissible justifications for automobile searches incident to arrest in Arizona v. Gant, 556 U.S. __, 129 S.Ct. 1710 (2009). Although Plaintiff was not arrested in the present case, Gant is nonetheless instructive. The Court in Gant reiterated that for traffic violations, "there will be no reasonable basis to believe the vehicle contains relevant evidence." Arizona v. Gant, 556 U.S. __, 129 S.Ct. 1710, 1719 (2009) (holding that police could

not expect to find evidence of driving with a suspended license in the passenger compartment of the driver's car). While acknowledging that the privacy interest in a vehicle is less substantial than the privacy interest in a home, the Court explained that:

> A rule that gives police the power to conduct such a search whenever an individual is caught committing a traffic offense, when there is no basis for believing evidence of the offense might be found in the vehicle, creates a serious and recurring threat to the privacy of countless individuals. Indeed, the character of that threat implicates the central concern underlying the Fourth Amendment--the concern about giving police officers unbridled discretion to rummage at will among a person's private effects.

129 S.Ct. at 1720.

In the present case, Defendants could not have expected to find any evidence of Plaintiff's alleged failure to yield to a pedestrian in Plaintiff's glove compartment. See Knowles, 525 U.S. at 118; Gant, 129 S.Ct. at 1719. Even if Defendants' search had uncovered a current form of identification, that identification would not be evidence that Plaintiff failed to yield to a pedestrian. If Defendants were "not satisfied with the identification furnished by [Plaintiff], this may be a basis for arresting him rather than merely issuing a citation." Knowles, 525 U.S. at 118. It is, however, notable that that did not occur. Plaintiff's failure to provide identification does not justify a warrantless search of his glove compartment. Id.[8]

---

[8] While the precise issue addressed in Knowles was whether a "full" search of a car is justified incident to citation, the Court did not suggest that a narrower search (e.g., search limited to the glove compartment) might be justified. The Court's rationale in rejecting a "full" search would apply equally to prohibit a search limited to the glove compartment – no evidence of a traffic violation would be found in the glove compartment, and any dissatisfaction with the identification furnished by the driver could be addressed by arresting the driver. Further, if a police officer cannot conduct a warrantless vehicle search for identification for a driver arrested for a traffic violation, see Gant, 129 S.Ct. at 1719, it would be illogical to allow such a search where the driver is not arrested.

Because Defendant has not identified any legal basis to justify a warrantless search of Plaintiff's glove compartment for identification, Defendants' summary judgment motion on the basis of a justified search for identification should be denied.

## **CONCLUSION**

For all of the reasons stated above, it is respectfully recommended that Defendants' Motion for Summary Judgment (Doc. 45) should be **DENIED**.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation are due by December 17, 2010. Responses to objections are due by January 3, 2011.

s/ Cathy Bissoon  
Cathy Bissoon  
U.S. Magistrate Judge

December 3, 2010

cc (via CM/ECF email):

Thomas D. Crock
All attorneys of record